NUSSBAUM TRUCKING, INC., *et al.*, Plaintiffs-Appellees, *v.*
ILLINOIS COMMERCE COMMISSION, Defendant-Appellant.

Second District   No. 81-58

Opinion filed August 26, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (Hercules F. Bolos and Allen C. Wesolowski, Assistant Attorneys General, of counsel), for appellant.

Paul J. Maton and Murray L. Barr, both of Maton, Goldstein and Barr, of Chicago, and Roy J. Solfisburg, Jr., of Aurora, for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The Illinois Commerce Commission (hereinafter ICC) conducted hearings on the petition of C. P. Brown and I. C. Hemmings (hereinafter applicants) to acquire control of Chicago Express Co., Inc. (hereinafter the carrier) by purchase of its outstanding capital stock. Approval of such an acquisition by the ICC is governed by the provisions of section 18—309 of the Illinois Motor Carrier of Property Law (Ill. Rev. Stat. 1979, ch. 95½, par. 18—100 *et seq*.). A number of carriers were permitted to intervene in the proceedings for the purpose of objecting to the acquisition. Following the offer and acceptance of a restrictive amendment relating to commodities and territory, however, a number of the intervenors with-

drew. Of the remaining five intervenors, the three plaintiffs, Nussbaum, Carstensen and Horn (hereinafter plaintiffs) successfully sought reversal of the ICC's order in the circuit court of Kane County, which remanded the cause to the ICC. The ICC here appeals that reversal.

This is the background of the case: In 1967, the ICC approved acquisition of control of the carrier by the Martin-Brower Corporation. Approximately one year later, Martin-Brower sold the carrier to Dr. Thomas Brown; this sale was unlawful because the sale was made without ICC approval. Next, Dr. Brown sold the carrier to Ronald Drobny; this sale was also unlawful because there was no ICC approval. Drobny died suddenly in an auto accident in March 1977. According to applicant Hemming's testimony, the carrier at that time was in dire financial straits, had no money to meet the payroll, and its employees were refusing to work. The carrier was managed solely by Drobny, and it had served since 1973 as the local cartage agent and interline carrier on interstate traffic in Chicago for the applicants' corporation, Brown Transport. Hemmings testified they looked for another local carrier to replace Chicago Express, but found none which was suitable or which was interested in interlining. In order to get their freight moving again, applicants assumed control of the carrier's operations and began negotiations with Drobny's widow for purchase of the carrier's stock. Applicants petitioned the ICC for temporary authority on December 19, 1977, and it was granted on January 4, 1978.

At the time of the hearing below before the ICC, Drobny's widow had sold the applicants the carrier's stock. This sale was likewise unlawful because there was no prior ICC approval. The circuit court order, which is the subject of this appeal by the ICC, reversed after an appeal by intervening trucking companies the ICC's somewhat belated approval of the applicant's acquisition of control of the carrier.

In its lengthy order of March 19, 1980, granting approval of the acquisition, the ICC found, *inter alia*, that: (a) it had jurisdiction of the cause; (b) the carrier possessed a certificate issued by the ICC on September 14, 1967, authorizing it to perform intrastate transportation of certain specified commodities in a certain specified territory; (c) abstracts of representative shipments sufficient to show the carrier had been in active operation were introduced; (d) that all of carrier's outstanding stock has been sold to the applicants; (e) that the evidence showed the applicants were qualified financially and by experience to control and operate the carrier; (f) that the evidence introduced by the intervening carriers had not persuaded the ICC that the acquisition of the carrier by the applicants would result in destructive competition that would cause a deterioration in service or quality with consequential harm to existing carriers and the shipping public; and (g) that approval of the acquisition

would be consistent with the public interest in that the carrier is and has been supplying the service for which there was a demonstrated public need. The ICC's findings were prefaced by a detailed recitation of the facts of the case and the evidence received during hearings.

The ICC denied rehearing, and plaintiffs appealed to the circuit court, which court reversed the ICC's order on January 5, 1981, and remanded it thereto "for further proceedings consistent with this decision." The circuit court found, *inter alia*, that: (a) the seller of the carrier's stock to the applicants, the estate of R. J. Drobny, never had legal title thereto; (b) all operations conducted under the authority of the carrier's certificate by anyone other than the last ICC-approved party (Martin-Brower Corporation) were illegal; (c) the ICC's approval of the acquisition was contrary to the law; (d) the evidence does not support approval under section 18—309 of the Illinois Motor Carrier of Property Law; and (e) the ICC's order failed to make the findings specified by section 18—309 and was, therefore, invalid.

The ICC raises these issues on appeal:

(1) Whether it made the requisite specific findings;

(2) Whether those findings were supported by the manifest weight of the evidence;

(3) Whether its order was contrary to law, and

(4) Whether the circuit court had authority to remand the cause to it and direct that it make certain findings of fact.

■■ ■ The ICC correctly points out that the scope of authority of the reviewing court in this case is limited to a determination of (1) whether the ICC acted within the scope of its authority; (2) whether it made findings in support of its decision; (3) whether the findings have substantial support in the record, and (4) whether constitutional rights have been violated. (*Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1973) 55 Ill. 2d 461; *Monarch Gas Co. v. Illinois Commerce Com.* (1977), 51 Ill. App. 3d 892.) Further, findings and conclusions of fact of the ICC are held to be *prima facie* true and will not be set aside unless they are against the manifest weight of the evidence. (*Monarch; Village of Hartford v. Illinois Commerce Com.* (1979), 75 Ill. App. 3d 133.) However, as plaintiffs point out, this rule does not apply to conclusions of law. *Leslie Car Wash v. Department of Revenue* (1976), 39 Ill. App. 3d 931, 934.

Section 18—309(3) requires that before the ICC approve an acquisition of control, it must find that: (a) the purchaser or lessee is fit, willing and able; (b) that the operations of the proposed seller or lessor have not been abandoned, suspended, discontinued or dormant, and (c) that the transaction proposed will be consistent with the public interest and the declaration of policy set forth under section 18—101 of the act. Ill. Rev. Stat. 1979, ch. 95½, pars. 18—309(3), 18—101.

The circuit court's order recited its finding that the ICC's order failed to contain these specific findings in that the language used by the ICC was "not synonymous with the language employed by section 18—309(3)" and that these findings were an indispensible prerequisite to the validity of the order. In accord with that finding, the plaintiffs state that an express finding is indispensible (*Rockwell Lime Co. v. Commerce Com.* (1940), 373 Ill. 309, 323), and cite *Knox Motor Service, Inc. v. Illinois Commerce Com.* (1979), 77 Ill. App. 3d 590, for the proposition that authority which is not being actually and substantially used is not synonymous with "authority which has been abandoned, suspended or discontinued." The appellate court there found the ICC's order failed to set forth sufficient findings of fact on which to base its action and, therefore, judicial review of the issues was not possible. *Knox*, at 595.

Plaintiffs' reliance on these cases is misplaced. The "express" finding required in *Rockwell* meant that the ICC must make specific "findings" as opposed to simply expecting that its finding on a particular point will be supplied by implication with reference to the complete record. The express finding contemplated by *Rockwell*, and urged by plaintiffs here, does not require that the ICC's findings mimic the words used in the statute. (*Cf. Brinker Trucking Co. v. Illinois Commerce Com.* (1960), 19 Ill. 2d 354, 357-58 (a finding that the applicant was "fit, willing and able" held to state a mere conclusion.).) The *Knox* holding is inapplicable because that was a situation where the ICC looked at the part of the authority that *was* being "actually and substantially used" and then incorrectly treated the remaining part of the authority as having been "abandoned, suspended, or discontinued," and, consequently, modified the carrier's authority by deleting that part which the ICC considered *was not* being "actually and substantially used."

■■ As correctly noted by the ICC, the rule is that its findings "must be sufficiently specific to enable a court to intelligently review the decision of the Commission and ascertain whether the facts found afford a reasonable basis for the order entered." *Brinker Trucking Co. v. Illinois Commerce Com.* (1960), 19 Ill. 2d 354, 357.

■■ We believe the ICC's findings were specific enough to allow us to determine that the order had a reasonable basis in fact. The ICC found the carrier was operating under a certificate issued in 1967; that the abstracts of representative shipments introduced for the periods of February 18, 1969, to March 4, 1970, July 4, 1976, to December 18, 1976, and January 1, 1978, to June 17, 1978, were competent evidence sufficient to support the finding that the carrier had been in active operation transporting all commodities to the extent of its authority; that the applicants had already bought all of the carrier's outstanding stock; that the applicants were qualified financially and by experience and ability to

control and operate the carrier; that the approval of the acquisition of control is consistent with the public interest in that the carrier is and has been supplying the service for which there was a demonstrated public need; and that neither the evidence of the intervenors nor post-hearing arguments of their counsel was persuasive to show that approval of the acquisition would result in destructive competition that would cause a deterioration in service, quality, and consequent harm to existing carriers and the shipping public.

In our opinion, these findings demonstrate the ICC carefully considered the circumstances of this case in order to ascertain whether the three statutorily mandated prerequisites to approval existed. It found that the prerequisites had been fulfilled and, accordingly, granted its approval of the acquisition.

Next, the circuit court's order recited that the evidence did not support the ICC's order because: (a) the abstracts of representative shipments were improperly sponsored as evidence; (b) the ICC improperly considered evidence of operations illegally performed to prove that the proposed transaction was consistent with the public interest and the declaration of policy set forth under section 18—101; (c) the ICC ignored illegal operations in determining whether the purchasers were fit, willing and able, and (d) hearsay is not competent evidence and is not admissible under section 60 of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 64).

Plaintiffs concur with the circuit court's finding, contending the abstracts were admitted despite a lack of proper foundation for the admission of the business records as required by Supreme Court Rule 236 (Ill. Rev. Stat. 1979, ch. 110A, par. 236). Plaintiffs cite *Chicago & Northwestern Ry. Co. v. Illinois Commerce Com.* (1927), 326 Ill. 625, 630, for the proposition that "[w]hile the commission is not a court, the same rules as to the admissiblity of evidence as in a court should be observed in its hearings." They then cite *Novicki v. Department of Finance* (1940), 373 Ill. 342, for the proposition that the rule against hearsay is a "basic" rule and is not a "technical" rule that would be excused under section 60 of the Public Utilities Act.

Section 60 provides in pertinent part:

" * * * In the conduct of any investigation, inquiry or hearing neither the Commission nor any commissioner or hearing examiner shall be bound by the technical rules of evidence, and no informality in any proceeding or in the manner of taking testimony before the Commission, any commissioner or hearing examiner of the Commission shall invalidate any order, decision, rule or regulation made, approved, or confirmed by the Commission. * * *" (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 64.)

McCormick on Evidence is instructive here with regard to the rationale for such permissiveness:

"Many reasons support the open admission of hearsay and other legally incompetent evidence in admistrative hearings. Foremost among them is the fact that the exclusionary rules do not determine the probative value of the proffered evidence. Professor Davis, the leading proponent that hearing officers should make no distinction between hearsay and nonhearsay evidence, makes the point this way.

'[T]he reliability of hearsay ranges from the least to the most reliable. The reliability of non-hearsay also ranges from the least to most reliable. Therefore the guide should be a judgment about the reliability of particular evidence in a particular record in particular circumstances, not the technical hearsay rule with all its complex exceptions.'

To require that a trial examiner refuse to admit hearsay makes no sense where there is no jury to protect and the trier of fact is equally exposed to the evidence whether he admits or excludes it. * * * Hearsay, of course, is not subject to current, in-court cross-examination, but that limitation affects the weight the evidence carries, not its admissibility." McCormick, Evidence §350, 841-42 (2d ed. 1972).

■■ ■ Additionally, *Novicki* predated the 1967 adoption of Illinois Supreme Court Rule 236 which created the business record exception to the hearsay rule. Under this exception, the witness (in this case, the "sponsor") need not have been the original entrant or custodian of records at the time they were compiled in order for the witness to be able to produce the records for admission. (*Smith v. Williams* (1975), 34 Ill. App. 3d 677; *Secco v. Chicago Transit Authority* (1955), 6 Ill. App. 2d 266.) It is clear the abstracts were introduced in order to resist a finding by the ICC that the operations of the carrier had been "abandoned, suspended, discontinued or dormant." The abstracts received indicated that the carrier had been operated at least since mid-February of 1969; the ICC's order recited it had continuous and current insurance and tariffs on file for the carrier for the period of 1967 through 1978 covering the entire scope of its authority. Applicant Hemmings additionally testified the carrier was not past due on any franchise fees or taxes owed to the State. We conclude the abstracts were properly admitted by virtue of Supreme Court Rule 236 and section 60 of the Public Utilities Act.

■■■ Plaintiffs next argue it would be absurd to admit evidence of illegal operations for purposes of section 18—309(3), yet disallow the same type of evidence for purposes of section 18—307. That section disallows the use of such evidence to secure an amendment which would increase the

scope of the carrier's authority. The ICC cogently argues that the proscription in section 18—307 was fashioned to cover instances where a motor carrier is operating either without a certificate, or is operating outside the scope of its granted authority. In contrast, the instant cause involves the operations of a certificate holder (Chicago Express) within the scope of its granted authority, conducted, however, by unauthorized owners thereof. In view of the distinct and different purposes for which abstracts may or may not be offered under these two sections of the Illinois Motor Carrier of Property Law, we conclude the abstracts, though evidence of operations conducted by owners who were unauthorized by the ICC, were nevertheless competent evidence to show Chicago Express's operations had not been abandoned, suspended, discontinued or dormant.

■■ Plaintiffs last argue in connection with this issue that a finding of the applicant's fitness is negated by the evidence of their unauthorized past operations. We believe the ICC, however, could likewise have considered the current application as evidence of their rehabilitation and willingness to conform to the requirements of the law, and approval of the application does not amount to a condonation of their past transgressions. (McMann v. Commerce Com. (1967), 38 Ill. 2d 126, 131.) Further, there was evidence all necessary taxes and licenses had been paid and/or secured, and that the carrier was operated totally within the scope of its authority. In this regard we note that the certificate issued to the carrier remains in effect until such time as it is suspended, cancelled, or revoked by the ICC. (Ill. Rev. Stat. 1979, ch. 95½, par. 18—307.) Since the ICC took no such action in this case, the carrier's operations were conducted pursuant to an effective certificate, even though control of the carrier was exercised by non-ICC approved persons.

■■ For the foregoing reasons, we find the ICC's findings were supported by the manifest weight of the evidence.

■■ Plaintiffs assert the ICC has exclusive jurisdiction over the sales of stock of public utilities (People v. Whitmer (1927), 243 Ill. App. 244), and because there was no compliance here with statutory requirements, the sales of stock from Martin-Brower to Dr. Brown and then to Ronald Drobny were illegal and Drobny's estate cannot now purport to transfer the stock to the applicants since it does not have legal title thereto. Plaintiffs argue that the grant of the present application validates the prior unauthorized transactions and is therefore contrary to expressed legislative intent and policy. Plaintiffs urge that flagrant disregard and willful evasion of the law call for a voiding of the sale was done in Klopf v. Illinois Commerce Com. (1977), 54 Ill. App. 3d 491, in that unlawful acts should not be rewarded with ICC approval. Klopf involved the sale of public utility right-of-way governed by the provisions of section 27 of the

Public Utilities Act. (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 27.) We observe here that the Public Utilities Act and the Illinois Motor Carrier of Property Law are *in pari materia* and should be construed together to determine legislative intent. *Potter v. Chicago Heights Motor Freight, Inc.* (1979), 78 Ill. App. 3d 676.

The ICC asserts, however, that the circuit court's finding, to the extent it stands for the proposition that the carrier is operating illegally, is in error in that it is the act of maintaining unauthorized control or management of a carrier which is unlawful under section 18—309(5), and that it is the stockholder, and not the corporate carrier, who is the guilty party subject to the criminal and civil penalties in section 18—702. (Ill. Rev. Stat. 1979, ch. 95½, pars. 18—309(5), 18—702.) It characterizes—aptly so, we believe—its dilemma as having been to decide whether it should grant its approval of the acquisition, thereby giving reluctant recognition to the prior unauthorized transfers of stock, or to decide to deny the application for approval even though the uncontroverted evidence demonstrated the public need for the proffered service.

Although we find no error in the *Klopf* rationale, its application to the instant cause warrants a different result. In *Klopf*, the ICC voided the noncommission approved sale of railroad right-of-way to a consortium of adjoining landowners, approving instead the application for sale of the property to the Department of Conservation. The circuit court there reversed the order of the ICC as being against the manifest weight of the evidence and was itself reversed by the appellate court. That court found the ICC's order was supported by the evidence in that the public interest would be better served by sale of the land to the Department of Conservation which was willing to pay a higher price for less land than the private purchasers, and which intended to use the property for a nature trail with general public access. The *Klopf* court noted that "the test * * * is whether under the evidence the petition should reasonably be granted and whether the public will be convenienced thereby." *Klopf*, at 499.

Applying this test to the instant cause, we conclude the ICC's order represents the most reasonable solution to a difficult dilemma. Although we do not condone willful disregard for the law, we perceive no advantage to its strict application without regard for the equities peculiar to each case. Nor, apparently, did the legislature, for it granted the ICC discretion "to take whatever action is necessary * * * to prevent continuance of [a] violation" relating to transfer, consolidation, merger, and acquisition of control. Ill. Rev. Stat. 1979, ch. 95½, par. 18—309(6).

■■ Considering the untimely death of Mr. Drobny and the unavailability of another suitable local agent, we believe the applicant's summary assumption of control of the carrier without ICC approval was excusable.

Their delay in seeking temporary authority from the ICC (from March to December 1977) was not an excessive one, and was reasonably attributable to their desire to negotiate as effectively, yet sensitively, as possible with Drobny's widow. We do not perceive that any purpose would be served by holding the applicants responsible for the past transgressions of the prior unauthorized owners. The ICC received an affidavit in evidence from the assistant counsel for the Clorox Company, of which Martin-Brower Coporation is now a wholly owned subsidiary, relinquishing any interest it may have in carrier in favor of the applicants, and assenting to their proposed acquisition thereof. Of the two intervening carriers which testified, one stated the proposed acquisition of control would result in a substantial diversion of its traffic to the carrier; however, the evidence showed no such diversion—in fact, an increase in the intervenor's traffic had occurred during the time the applicants were utilizing their temporary authority. The other intervenor submitted an exhibit, but it did not show what traffic, if any, would be diverted by the proposed acquisition. The intervenor's witness also testified they had been aware of the carrier's existence for about the last eight years. The abstracts of representative shipments performed by the carrier indicate it was providing a needed service. Disapproval of the proposed acquisition at this point in time would serve no legitimate regulatory purpose and would only be detrimental to the public interest. For these reasons, we believe the ICC's order was not contrary to the law.

In view of our resolution of the issues above, we reverse the order of the circuit court of Kane County, and need not address the final issue raised by the ICC as to the circuit court's authority to remand the cause to the ICC for further preceedings consistent with its decision.

The judgment of the circuit court of Kane County is reversed.

Judgment reversed.

HOPF and VAN DEUSEN, JJ., concur.