CAR CARRIERS, INC., Clark Transport Company, Inc., Carrier Equipment Co., Transco Corporation, Transport Terminals, Inc., Selby Transport Co., JPB Corporation, James P. Byrne, and Tykely Investment Co., Plaintiffs-Appellants,

v.

FORD MOTOR COMPANY, Nu-Car Carriers, Inc., and Norfolk & Western Railway Company, Defendants-Appellees.

No. 84–1729.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 1985.

Decided April 29, 1986.

William D. Brejcha, Sullivan & Associates, Chicago, Ill., for plaintiffs-appellants.

Thomas A. Doyle, Baker & McKenzie, James S. Whitehead, Sidley & Austin, Chicago, Ill., for Ford Motor Co.

Robert M. Gault, Bruce D. Sokler, Peter A. Biagetti, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, Boston, Mass., Sheldon Davidson, Peterson & Houpt, Chicago, Ill., for Nu-Car Carriers, Inc.

Before COFFEY and RIPPLE, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

RIPPLE, Circuit Judge.

In this case, we are asked to decide whether the present litigation is barred by an earlier lawsuit under the doctrine of res judicata. For the reasons which follow, we hold that the present suit is barred by the earlier judgment and, accordingly, affirm the judgment of the district court.

In 1982, Car Carriers, Inc. (Car Carriers) and six related entities [1] brought an action against Ford Motor Company (Ford) and Nu-Car Carriers, Inc. (Nu-Car). Count I of the six count complaint (1982 Complaint) accused Ford and Nu-Car of conspiring in violation of the Sherman Act, 15 U.S.C. § 1. The remaining five counts asserted pendent state law claims.

The district court dismissed the entire action. *Car Carriers, Inc. v. Ford Motor Co.*, 561 F.Supp. 885, 889 (N.D.Ill.1983). The court found the antitrust claim lacking because the plaintiffs failed "to suffer the type of harm the antitrust laws were designed to recompense." *Id.* at 887. Further, since the court found that this defect was "noncurable," the antitrust claim was dismissed with prejudice. Having dismissed the complaint's only federal claim, the district court declined to exercise pendent jurisdiction over the remaining state law claims and dismissed them without prejudice. On appeal, a panel of this court affirmed the district court's decision in all respects. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir.1984).

Undaunted by their first unfruitful journey through the federal courts, Car Carriers and its related entities [2] filed the present action on October 25, 1983 (1983 Complaint). The 1983 Complaint consisted

[*] The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. The plaintiffs in the original action were: Car Carriers, Inc., Clark Transport Company, Inc., James P. Byrne, JPB Corporation, Carrier Equipment Company, Transco Corporation, and Tykely Investment Company. *Car Carriers, Inc.*

*v. Ford Motor Co.,* 561 F.Supp. 885, 885 n. 1 (N.D.Ill.1983).

2. In addition to the parties mentioned *supra* note 1, Transport Terminals, Inc., and Selby Transport Co. joined as plaintiffs in the second action.

of twenty-four counts: Counts I–VI alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*; Count XXIV alleged a violation of the Interstate Commerce Act, 49 U.S.C. §§ 11902–11904; the remaining seventeen counts alleged violations of Illinois law.

The district court again dismissed the entire action. *Car Carriers, Inc. v. Ford Motor Co.*, 583 F.Supp. 221, 229 (N.D.Ill. 1984). The court held that the federal claims arose from the same "basic fact situation" as that alleged in support of the 1982 Complaint's antitrust claim and, therefore, were barred by the doctrine of res judicata.[3] For reasons which are not relevant here, this dismissal was without prejudice.[4] The state law claims were again dismissed without prejudice as not pendent to any valid federal claim. After unsuccessful attempts to clarify or amend the district court's judgment,[5] this appeal followed.

## I

Before addressing Car Carriers' substantive claims, it will be helpful to set out the occurrences which sparked the 1982 Complaint—the initial litigation in this matter. As set forth in that complaint, from 1968 until 1981, Car Carriers transported new Ford vehicles from Ford's plants and railheads in the Chicago area. As a transport company, Car Carriers was regulated by both the Illinois and Interstate Commerce

Commissions; accordingly, Car Carriers' rates were subject to approval by both agencies. The complaint alleged that Ford had the power to control these rates either by formally opposing any rate increase sought before the agencies or by simply terminating the carrier.

According to Car Carriers, as early as 1975, Ford and its alleged co-conspirators entered into contracts and continuing combinations which were designed to restrain trade in the business of providing haulaway motor transportation for new Ford automobiles. As explained in this court's earlier opinion, Car Carriers accused Ford of employing the following method to implement its goal:

First, the carrier selected for elimination (the so-called "target carrier") would be required to make substantial investments in new tractor-trailer equipment, real estate, and new terminal facilities. In return, Ford would promise additional transportation traffic and "complete agreement with *increased* tariff rates necessary to pay for these acquisitions." After the "target" carriers had made these investments, however, Ford would then prevent them from obtaining the rate increases necessary for profitable operations.

Second, Ford, with support of other carriers, "[i]nterfered with and prevented [the] target haulaway carriers and their affiliates from selling their businesses

---

**3.** Unlike the first action, in which only Ford and Nu-Car Carriers were defendants, the second action included the Norfolk & Western Railway Company (N & W) as a defendant. The district court dismissed all actions against it. The court found that N & W was, at best, only derivatively liable on Counts I and II—RICO counts against Ford. Thus, since Counts I and II were dismissed, N & W could not be liable. 583 F.Supp. at 227–28. In addition, the district court dismissed Counts XXII and XXIII—the two pendent state claims against N & W.

**4.** In response to the appellants' claim that some of its counts sought relief for events occurring after the first judgment, the district court dismissed all the counts without prejudice. The court stated:

If Car Carriers can base the cause of action entirely on events occurring after April 1, 1983, it is free to do so—but this Court will not comb the 107-page Complaint to search for such allegations. Instead it will dismiss the 1983 Complaint without prejudice (leaving the res judicata effect of the with-prejudice dismissal of the 1982 Action intact).

583 F.Supp. at 226. Nonetheless, "[d]ismissal of an action without prejudice is appealable under 28 U.S.C. § 1291." *Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir.1984).

**5.** Nu-Car Carriers moved to clarify the district court's opinion and the appellants moved to "amend the judgment because certain of their claims ... [were] assertedly not barred by res judicata." 583 F.Supp. at 228. The district court denied both motions. *Id.*

and assets as going business concerns or prevented [the] target haulaway carriers from consolidation or merger with other carriers." Finally, Ford would apparently terminate its relationship with the target carrier at this point, thereby allowing the favored carriers to "acquire the businesses and assets of [the target carriers] at distress prices or for less than fair market value as going business concerns."

745 F.2d at 1104–05 (citations omitted).

Car Carriers further averred that *its* demise generally followed the pattern just described:

In 1975, Ford directed ... Car Carriers to sell ... [its] assets and business to a second Ford carrier. After Car Carriers had entered into negotiations for a sale with the E & L Transport Co. ..., however, Ford "unreasonably interfered with and prevented" the consummation of the agreement by inducing the corporate parent of E & L to repudiate an executed letter of intent. In 1977 and 1978, Ford induced Car Carriers to purchase over $6,000,000 worth of new tractor-trailer equipment with the promise that Car Carriers "would be able to recover the cost of such equipment with additional transport business and *higher* tariff rates." However, during the entire period of 1975 to 1981, Ford caused Car Carriers's operations in Chicago to be unprofitable through its "refusal to allow adequate published tariff rates or other compensation" for Car Carriers and by "refusing to allow adequate temporary rate adjustments."

In 1979, Ford prevented Car Carriers from acquiring the outstanding stock of Automobile Transport, Inc. ("ATI"), which was at that time Ford's carrier in Wayne, Michigan and other areas. This action by Ford "prevented a carrier consolidation which would have generated valuable backhaul business and resulted in significant operating efficiencies and cost reduction benefits" to ATI, Car Carriers, and Ford. Later that year, Ford terminated ATI and awarded the substantial portion of ATI's business to Nu-Car and E & L on the basis of "sham and knowingly predatory bids."

In 1981, Ford solicited bid proposals for Chicago haulaway services from Car Carriers and other Ford transporters. In October of that year, Ford terminated Car Carriers and awarded the haulaway contract for the Chicago area to Nu-Car on the basis of the latter's "sham and knowingly predatory bid." To minimize the losses from the termination, Car Carriers attempted to sell its facilities and other assets to Nu-Car. However, the effort was frustrated when Ford and Nu-Car insisted on "walkaway and other onerous provisions ... as well as unacceptable covenants and releases" of Car Carriers's claims against Ford, Nu-Car, and Associated Transport, Inc.; Nu-Car eventually constructed its own terminal facility near the Ford plant on land provided by Ford.

745 F.2d at 1105 (citations omitted).

In this litigation, the appellants present three issues for our review. First, they ask that we reject the district court's fact-oriented test for res judicata in favor of an analysis which would differentiate causes of action based on the rights, duties, and injuries allegedly redressed by each claim. Second, assuming we adopt the district court's approach, the appellants ask that we relieve them of their res judicata burden because some of their claims were based on facts which—while admittedly in existence prior to the 1982 Complaint—were unknown to them until after judgment on that complaint. Finally, the appellants argue that some of the claims alleged in their 1983 Complaint were within the *exclusive* jurisdiction of the Illinois Commerce Commission and, thus, improperly before the district court. Accordingly, since the district court would have been without jurisdiction if these claims were alleged in the 1982 Complaint, the appellants urge us to lift the res judicata bar. Such a remedy is warranted, according to the appellants, to avoid foreclosing recovery on a claim which never could have been addressed in a federal court.

## II

The district court found that the federal claims alleged in the 1983 Complaint arose out of the same factual context as described in the 1982 Complaint. Thus, the court dismissed these claims as barred by the doctrine of res judicata. The appellants do not disagree with the district court's finding that both complaints arose out of a common core of operative fact; rather, they attempt to overturn the district court's decision by persuading us to adopt an alternate formulation for determining the application of res judicata. Under this alternate test, res judicata would not bar a second lawsuit when "[a]n analysis of the rights, duties, and injuries involved in the second lawsuit reveals that they are materially different from those in issue in the first." Appellants' Br. at 28. For the reasons which will be explained in the following section, we decline to adopt the appellants' suggested formulation.

Res judicata is designed to ensure the finality of judicial decisions. *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). It is not "a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts...." *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 507, 61 L.Ed. 1148 (1917). It "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown*, 442 U.S. at 131, 99 S.Ct. at 2209. As we recently stated in *Alexander v. Chicago Park District*, 773 F.2d 850 (7th Cir.1985), " '[i]ts enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if ... conclusiveness did not attend the judgments of such tribunals.' " *Id.* at 853 (quoting *Nevada v. United*

*States*, 463 U.S. 110, 129, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983)).

## A

"Under res judicata, 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.' " *Brown*, 442 U.S. at 131, 99 S.Ct. at 2209 (quoting *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979)). In determining the scope of a "cause of action," this circuit has utilized the "same transaction" test. *Alexander*, 773 F.2d at 854; *Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1241 (7th Cir.1983); *Harper Plastics, Inc. v. Amoco Chemicals Corp.*, 657 F.2d 939, 944 (7th Cir.1981). Under this test, a "cause of action" consists of " 'a single core of operative facts' which give rise to a remedy." *Alexander*, 773 F.2d at 854; *see also Mandarino v. Pollard*, 718 F.2d 845, 849 (7th Cir.1983). This "same transaction" test is decidedly fact-oriented. Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost. Thus, "a mere change in the legal theory does not create a new cause of action." *Alexander*, 773 F.2d at 854. Therefore, prior litigation acts as a bar not only to those issues which were raised and decided in the earlier litigation but also to those issues which *could* have been raised in that litigation. *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981); *Brown*, 442 U.S. at 131, 99 S.Ct. at 2209; *Alexander*, 773 F.2d at 854; *Lee v. City of Peoria*, 685 F.2d 196, 198 (7th Cir.1982).

As the commentators have noted, this approach is consistent with the general litigation scheme established by the Federal Rules of Civil Procedure.[6] Litigants have great latitude in joining claims and amending pleadings. *See* Fed.R.Civ.P. 15, 18. Thus, to further the purpose of the rules, it is appropriate that res judicata be

---

6. *See* 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice ¶ 0.410[1] (2d.ed.1984); Restatement (Second) of Judgments § 24

(1980); *see also* J. Friedenthal, M.K. Kane & A. Miller, Civil Procedure 627 (1985).

defined with sufficient breadth to encourage parties to present all their related claims at one time. *See Harper Plastics,* 657 F.2d at 946.[7]

The appellants argue that, while the "same transaction" test may be the primary test for defining a "cause of action," it is not the universal test. The appellants argue that a more appropriate test in this case would be one which scrutinized the theories of relief (RICO, Interstate Commerce Act, Sherman Act) in search of differences between the rights, duties and injuries addressed by each. As support for this approach, they rely on *Harper Plastics, supra; Himel v. Continental Illinois National Bank and Trust Co.,* 596 F.2d 205 (7th Cir.1979); *Robbins v. District Court,* 592 F.2d 1015 (8th Cir.1979); and *Kernel Kutter, Inc. v. Fawcett Publications, Inc.,* 284 F.2d 675 (7th Cir.1960).

■ We do not disagree that these cases contain language suggesting that res judicata analysis can involve a comparison of the rights, duties and injuries that have been alleged.[8] We believe, however, that this language must be read cautiously lest it undermine the fundamental policies of res judicata: "that there be an end of liti-

gation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Iowa State Traveling Men's Association,* 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931). It is no accident that the "same transaction" test has become "the present trend among courts nationwide." *Hagee v. City of Evanston,* 729 F.2d 510, 513 n. 5 (7th Cir. 1984); *see Nevada v. United States,* 463 U.S. 110, 130 n. 12, 103 S.Ct. 2906, 2918 n. 12, 77 L.Ed.2d 509 (1983) (comparing Restatement of Judgments § 61 with Restatement (Second) of Judgments § 24). It preserves—far more firmly than the alternate formulation—the fundamental policy concerns of the doctrine. In our view, these policy concerns counsel against using in this case the "right-duty" approach which the appellants have suggested. Indeed, even in *Harper Plastics,* a case upon which the appellants heavily rely, the court explicitly warned that an unsuccessful party ought not be able to "frustrate the doctrine of *res judicata* by cloaking the same cause of action in the language of a theory of recovery untried in the previous litigation." 657 F.2d at 945. Therefore, the "right-

---

7. Further, we note that the Federal Rules define compulsory counterclaims as those claims which have arisen out of the same transaction or occurrence that prompted the plaintiffs' action. *See* Fed.R.Civ.P. 13(a). By compelling defendants to bring their claims in the same action, the rule encourages the simultaneous and final resolution of all claims which arise from a common factual background. Thus, if the Federal Rules impose this obligation on defendants, we believe that it is appropriate to interpret the doctrine of res judicata in such a way as to further that same goal by imposing a similar obligation on plaintiffs.

8. We note that even these cases treat the "right-duty" approach as a secondary methodology. *Harper Plastics* referred to the "transactional approach" as the "primary test." 657 F.2d at 944. In *Himel,* the court did not apply res judicata because it found that the causes of action arose out of "different events." 596 F.2d at 209. In *Robbins,* while the court talked about rights and duties, it held that the two suits sought recovery on the same cause of action because they were "based on the same nucleus of operative fact." 592 F.2d at 1018.

*Kernel Kutter, Inc. v. Fawcett Publications, Inc.,* 284 F.2d 675 (7th Cir.1960), is unpersuasive as support for the appellants' argument. We first note that although the *Kernel Kutter* decision has been on the books for twenty-five years, no court in this circuit has followed it. In fact, the only court even to mention it, *Harper Plastics,* found it to be readily distinguishable. 657 F.2d at 945. We find it similarly unhelpful.

Res judicata is designed to encourage parties to bring all their claims and theories of relief in a single action. As we read *Kernel Kutter,* that is precisely what happened in that case. There, the plaintiff charged that the defendant had destroyed its business by publishing a "strange Bass fishing method" previously sold by the plaintiff through advertisement in defendant's magazine. Initially, two counts were brought—one based on libel, the other on breach of a confidential relationship. The court merely held that the dismissal of the first count for failure to comply with the one year statute of limitations for libel was not res judicata on the second count which was governed by a five year statute of limitations.

duty" approach should not be used as a substitute for the "same transaction" test absent compelling circumstances and a clear showing that such a substitution will not undermine the policies of res judicata. Appellants have made absolutely no such showing in this case.

### B

We turn now to an application of the "transactional" test to the facts of this case. We must determine whether Car Carriers' RICO and Interstate Commerce Act claims could have been brought in the earlier litigation; in other words, we must decide whether these claims are part of the same cause of action which spawned the earlier Sherman Act claim.[9]

In concluding that both the 1982 and the 1983 Complaints alleged the same cause of action, the district court first relied on an analysis derived from the doctrine of pendent jurisdiction. As enunciated in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), a federal court may exercise pendent jurisdiction over a state law claim if both the state and federal claims derive from a common nucleus of operative fact. *Id.* at 725. In this case, the alleged pendent claims were virtually identical to the state law claims alleged in the 1982 Complaint. Thus, according to the district court's reasoning, the appellants had admitted that the Sherman Act, RICO, and Interstate Commerce Act claims derived from a common nucleus of operative fact. Therefore, the district court concluded that res judicata was appropriate because the 1983 Complaint's RICO and Interstate Commerce Act claims arose out of the same set of facts as did the 1982 Complaint's Sherman Act claim.

There is a good deal of merit to the trial court's position. However, we are reluctant to rely on that ground alone. Mere allegations that state claims are pendent to a federal action do not create pendent jurisdiction. When dismissing both the 1982 Complaint's federal claims and the 1983 Complaint's federal claims, the district court also dismissed the state claims without determining whether they had properly been brought as pendent claims. Therefore, since the district court's decision did not disclose whether pendent jurisdiction would have been proper had the federal claims survived, we must find a more solid basis for our decision.

■ As an alternate ground for its decision, the district court also specifically found that the RICO and Sherman Act counts arose out of the same underlying facts. The court stated:

> Like the present RICO claims, the earlier antitrust claims alleged Ford induced Car Carriers to make investments it could not recoup. Like the earlier antitrust claims, the current RICO claims allege Car Carriers was terminated due to a sham and predatory bid, and Ford and Nu-Car refused to buy Car Carriers' assets upon its termination.

583 F.Supp. at 226 (footnote omitted). We agree; the RICO and Sherman Act claims arose out of a single core of operative facts and, thus, were parts of the same cause of action.

The district court did not specifically mention the Interstate Commerce Act claim—Count XXIV of the 1983 Complaint. Yet, a brief review of that count makes clear that it too was part of the same cause of action. Paragraph 504, the first paragraph of that count, states in relevant part:

---

**9.** The three threshold requirements of res judicata are: 1) an identity of the parties or their privies, 2) an identity of the causes of action, and 3) a final judgment on the merits. *See Alexander v. Chicago Park Dist.*, 773 F.2d 850, 854 (7th Cir.1985); *Lee v. City of Peoria*, 685 F.2d 196, 199 (7th Cir.1982).

In this appeal, neither party has contested the "final judgment" element. Further, neither party has questioned the identity of the parties in the two actions. While N & W was a new party defendant in the second action, *see supra* note 3, it did not join in the res judicata motion; and even though the named plaintiffs were not identical in both actions, the additional plaintiffs in the second action did "not deny their obvious privity with the plaintiffs in the 1982 Action." 583 F.Supp. at 223. Therefore, the only open question concerns the identity of the causes of action involved in both suits.

Count XXIV seeks damages from Ford and Nu-Car as a result of their individual and joint violations of 49 U.S.C. §§ 11902, 11903(a) and (b) and 11904(a)(3) and (b) wherein they both solicited, gave, granted, accepted, received, and offered rebates, concessions and discrimination by various direct and indirect means in a continuing course of conduct from July 1981 until about June 1983, which conduct was designed to replace Car Carriers at Chicago, to install Nu-Car as Ford's driveaway and haulaway carrier, and to secure Nu-Car improvement of Ford owned real estate in Chicago by Nu-Car at no cost to Ford. These Ford/Nu-Car violations grew out of Ford's request for bids to replace CCI in Chicago, Nu-Car's response to that request and Ford's subsequent actions in installing Nu-Car in Chicago and elsewhere with incremental traffic effective October 1981.

This allegation parallels the facts underlying the 1982 Complaint. Accordingly, the district court did not err by dismissing this count.[10]

In sum, we hold that the district court properly applied the "same transaction test" to dismiss all of Car Carriers' federal claims.

### III

■ As a second ground for appeal, Car Carriers asks that we lift the res judicata bar for some of its claims because Car Carriers did not discover the facts supporting those claims until after the 1982 Complaint had been dismissed.[11] In essence, Car Carriers claims that since res judicata will not bar actions based on facts *occur-*

ring *after* the initial judgment, *see Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955)— presumably because those facts were unknown to the plaintiffs when they initiated their first action—res judicata should likewise not bar claims based on prejudgment facts which were unknown to the plaintiffs when they filed. We find this contention to be absolutely without merit.

As we concluded in Part II, *supra,* all of the appellants' claims were part of the same cause of action; they all arose from a single core of operative fact. Since all claims arose from the same factual context and since the appellants had sufficient knowledge to sue on one claim, they also had sufficient knowledge to sue on the rest of their claims. When a litigant files a lawsuit, the courts have a right to presume that he has done his legal and factual homework. It would undermine the basic policies protected by the doctrine of res judicata to permit the appellants to once again avail themselves of judicial time and energy while another litigant, who has yet to be heard even once, waits in line behind them.

### IV

■ The appellants' final point need not long delay us. The appellants cite to *Radio Paging of Illinois, Inc. v. Houser Communications, Inc.,* 121 Ill.App.3d 245, 76 Ill.Dec. 657, 459 N.E.2d 294 (1984) and *Friederich v. Illinois-American Water Co.,* 94 Ill.App.3d 172, 49 Ill.Dec. 816, 418 N.E.2d 836 (1981) as standing for the proposition that "matters involving rates and services of public utilities operating under the jurisdiction of the Illinois Public Utili-

---

**10.** While we are aware that the actions alleged in Count XXIV extend beyond the time period alleged in the 1982 Complaint, we believe that this discrepancy is unimportant. In this case, it is sufficient that there is some chronological overlap and that the two complaints arise out of the same common nucleus of operative fact. To the extent that Count XXIV addresses events occurring after the first judgment, we note that the 1983 Complaint was dismissed without prejudice specifically to allow such a claim to be brought later. *See supra* note 4.

**11.** As will be explained at note 12 and its accompanying text, *infra,* we only address this issue as it applies to the federal question counts—the only ones which were dismissed because of res judicata.

We also note that the appellants, instead of having us lift the res judicata bar, alternatively sought an evidentiary hearing to discover what knowledge they actually had at the time of the 1982 Complaint's filing.

ties Act ... are matters within the *exclusive* jurisdiction of the Illinois Commerce Commission." Appellants' Br. at 34 (emphasis added). Thus, since "Illinois Courts have also held that the Motor Carrier Law and the Public Utilities Act are *in pari materia* for the purposes of determining legislative intent," *id.; see Nussbaum Trucking, Inc. v. Illinois Commerce Commission,* 99 Ill.App.3d 741, 55 Ill.Dec. 56, 425 N.E.2d 1229 (1981); *Potter v. Chicago Heights Motor Freight, Inc.,* 78 Ill.App.3d 676, 33 Ill.Dec. 642, 396 N.E.2d 1366 (1979), the appellants' "claims involving rates and services of motor carriers ... [must also be] subject to the initial and exclusive jurisdiction of the I.C.C." Appellants' Br. at 34. It therefore follows, according to the appellants, that if some of their claims were committed to the exclusive jurisdiction of an Illinois agency, the federal courts never could have entertained them and, thus, could not meaningfully have applied a res judicata bar.

This argument is seriously flawed. The appellants seem to misunderstand what was decided in the district court; it relied on res judicata to dismiss only the appellants' federal question claims. The state claims were dismissed without prejudice for lack of pendent jurisdiction and therefore are not encompassed within the district court's res judicata decision. The jurisdiction of the Illinois Commerce Commission—whether general or limited, primary or exclusive—is not relevant to the disposition of the federal claims.[12]

### V

In disposing of the 1983 Complaint, the district court properly analyzed the res judicata effect of its earlier decision. We note, in addition, that since Counts I and II were properly dismissed as barred by res judicata, all actions against the appellee Norfolk & Western Railway Company were properly dismissed inasmuch as they were derivative. Therefore, the decision of the district court is

AFFIRMED.

---

12. We have no occasion to address how the primary/exclusive jurisdiction issue affects the alleged diversity counts. First, the district court expressly refused to decide whether those counts were barred by res judicata, 583 F.Supp. at 228 & n. 2; thus, since neither party has appealed this issue, it is not properly before us. Second, in their brief, the appellants admit that the alleged diversity jurisdiction was unfounded. Appellants' Br. at 4 n. 1. Therefore, for purposes of this appeal, we treat these counts like all the other pendent state claims.