CAR CARRIERS, INC., et al., Plaintiffs,

v.

FORD MOTOR COMPANY, et al., Defendants.

No. 83 C 7517.

United States District Court, N.D. Illinois, E.D.

March 9, 1984.
Supplemental Opinion March 28, 1984.

Francis J. McConnell, McConnell, Ruberry & Beckley, Chicago, Ill., for plaintiffs.

Michael K. Murtaugh, Baker & McKenzie, Chicago, Ill., for Ford Motor Co.

Sheldon Davidson, Marilee Roberg, Pederson & Houpt, P.C., Chicago, Ill., for Nu-Car Carriers, Inc.

Kirk B. Johnson, David F. Graham, Sidley & Austin, Chicago, Ill., for Norfolk & Western Ry. Co.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

In this action (the "1983 Action") Car Carriers, Inc. and eight related entities (for convenience collectively "Car Carriers," treated as a singular noun), including controlling shareholder James P. Byrne, have filed a 24-count, 107-page Amended Complaint (the "Complaint" or "1983 Complaint") accusing Ford Motor Company ("Ford"), Nu-Car Carriers, Inc. ("Nu-Car") and the Norfolk & Western Railway Company ("N & W") of racketeering and various unlawful business practices in contravention of federal and state law. Ford and Nu-Car now move for dismissal under Fed. R.Civ.P. ("Rule") 12(b)(6), claiming Car Carriers is barred from bringing this suit by the res judicata effect of a dismissal with prejudice of its earlier action against them, *Car Carriers, Inc. v. Ford Motor Co.*, No. 82 C 7009 (the "1982 Action").[1] N & W also moves to dismiss under Rule 12(b)(6), asserting the Complaint discloses no basis on which it could be held liable for the alleged practices of Ford and Nu-Car. For the reasons stated in this memorandum opinion and order, all defendants' motions are granted and this action is dismissed in its entirety on the terms hereafter specified.

### Procedural Profile

Car Carriers' 1982 Action alleged Ford and Nu-Car ran Car Carriers out of the business of shipping Ford automobiles from Chicago. Many of the relevant facts alleged in that suit are set forth in the Opinion, 561 F.Supp. at 886–87. Six claims were advanced by the Complaint in the 1982 Action (the "1982 Complaint"): one federal law count under Sherman Act § 1, 15 U.S.C. § 1, and five pendent state law

1. This Court's dismissal of that action is reported in the "Opinion," 561 F.Supp. 885 (N.D.Ill. 1983).

counts. This Court's Opinion dismissed the Sherman Act claim with prejudice because Car Carriers lacked "antitrust standing" to assert its claim—that is, the 1982 Complaint affirmatively showed no competitive harm to Car Carriers because actions attributed to the defendants (561 F.Supp. at 888) constituted "procompetitive rather than anticompetitive activity." With the Sherman Act claim gone, the state law claims were dismissed without prejudice as not pendent to any valid federal claim (*id.* at 889).

Car Carriers' 1983 Complaint also alleges facts surrounding Car Carriers' termination as a shipper of Ford automobiles. Except for three conspicuous differences, it is substantially similar to the 1982 Complaint:

1. It goes into greater detail: 24 counts and 529 paragraphs, as against the 1982 Complaint's six counts and 151 paragraphs.[2] Car Carriers' contention (discussed below) is the 1983 Complaint invokes facts not within the basic fact situation underlying the 1982 Action.

2. It invokes different legal theories. Unlike the 1982 Complaint, which contained only a single federal law count based on the Sherman Act and five Illinois law counts, the 1983 Complaint brings six counts under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, one count under the Elkins Act, codified at 49 U.S.C. §§ 11902–11904, and 17 counts under Illinois law.

3. It joins somewhat different parties. N & W was not a defendant in the 1982 Action and therefore cannot join with Ford and Nu-Car in invoking res judicata. In addition the 1983 Complaint adds two related entities as plaintiffs—Transport Terminals, Inc. ("Transport") and Selby Transport Co.—but that addition is irrelevant to res judicata because the new plaintiffs are in privity with the plaintiffs in the 1982 Action. Contrast

*Beard v. O'Neal,* 728 F.2d 894, 896–97 (7th Cir.1984).

### Ford and Nu-Car Res Judicata Motions

Res judicata bars a lawsuit if three essential elements are present, *Lee v. City of Peoria,* 685 F.2d 196, 199 (7th Cir.1982):

> (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits.

N & W does not join in the res judicata motion, and the additional plaintiffs in this action do not deny their obvious privity with the plaintiffs in the 1982 Action. Accordingly only the first two elements of res judicata are at issue.

### 1. *Final Judgment on the Merits*

▮ Because the opinion dismissed the 1982 Action for failure to state a claim upon which relief can be granted, it was a disposition of the case on the merits. As our Court of Appeals stated in *Bunker Ramo Corp. v. United Business Forms, Inc.,* 713 F.2d 1272, 1277 (7th Cir.1983) (citations omitted, emphasis in original):

> A dismissal for lack of subject matter jurisdiction is *not* on the merits and consequently will not bar a later suit.... A dismissal for failure to state a claim upon which relief can be granted, however, is a dismissal on the merits and is *res judicata. Federated Department Stores, Inc. [v. Moitie],* 452 U.S. [394,] at 398, 101 S.Ct. [2424,] at 2427 [69 L.Ed.2d 103] [(1981)]; *Harper Plastics, Inc. [v. Amoco Chemicals Corp.],* 657 F.2d [939,] at 945 [(7th Cir.1981)]. 1B Moore's Federal Practice ¶ 0.405[1] (2d ed. 1982).

Moreover the Opinion's language makes clear this Court intended to dispose of the 1982 Action on the merits. In its statement of facts the Opinion assumed as true not only allegations of the 1982 Complaint but also factual assertions in Car Carriers'

---

**2.** Any court might well question the propriety of a 529-paragraph complaint under Rule 8(a)(2) (requiring a "short and plain statement of the

claim"), but this opinion does not rest on that consideration.

memorandum not contained in that Complaint. This Court said it did so (561 F.Supp. at 886 n. 2) to show plaintiffs "confront more than mere pleading deficiencies." And the Opinion's "Conclusion" section stated (*id.* at 889, footnote omitted):

> Ford's and Nu-Car's motions to dismiss are granted. Because Count I could not possibly be repleaded to withstand Rule 12(b)(6) onslaught, this entire action is dismissed—Count I with prejudice and the other counts without prejudice.

Car Carriers interprets *Bunker Ramo* as holding any dismissal of a claim for lack of antitrust standing is not on the merits and thus is not res judicata. True enough, *Bunker Ramo* held Judge Aspen's dismissal of an earlier complaint in *Bunker Ramo Corp. v. Cywan,* 511 F.Supp. 531 (N.D.Ill. 1981)—a dismissal for failure to allege competitive injury—was not on the merits and had no res judicata effect. But in that case Judge Aspen had expressly stated (*id.* at 534) the dismissal was "for lack of subject matter jurisdiction." By contrast, the language quoted earlier from both the Court of Appeals' *Bunker Ramo* decision and the Opinion demonstrates this Court's disposition of the 1982 Action, unlike dismissal of the prior suit in *Bunker Ramo,* was a dismissal on the merits.

Car Carriers' parting shot on this issue is an argument this Court intended to bar only the filing of future antitrust claims, not the filing of claims under different theories as Car Carriers has done in its 1983 Complaint. Car Carriers cites an April 29, 1983 colloquy in open court at a hearing in which Car Carriers sought leave to file an Amended Complaint in the 1982 Action four weeks after the Opinion had dismissed the suit with prejudice. This Court viewed Car Carriers' motion for leave to amend its then-dismissed Complaint as a belated Rule 59(e) motion to alter or amend the judgment, and it thus denied that motion. When Car Carriers' counsel pointed out the proposed Amended Complaint contained RICO counts not lodged in the 1982 Complaint, this Court responded:

> You have only asked leave to file an amended complaint. I am denying leave to file the amended complaint. That obviously is not a substantive ruling with respect to counts not previously asserted. Your RICO count, for better or worse, you can take that business to Walgreen's or if it is delivered back into this Court I will deal with it.... I am not making a substantive ruling on your RICO claim.

Car Carriers contends that statement indicates this Court's willingness to consider the merits of the 1983 Complaint's RICO claims.

That argument is deficient for a number of reasons:

1. As an attempt to delve into this Court's state of mind, Car Carriers' argument fails. This Court neither had nor expressed any intention on April 29 to foreclose a later consideration of relevant issues that could bear on Car Carriers' future ability to reassert its claim.

2. Indeed the record in the 1982 Action definitively shows this Court harbored no such intent. In a portion of the April 29 transcript Car Carriers omitted to cite, this Court admonished Car Carriers' counsel:

> Then you can file a new lawsuit.... And you may be met with res judicata questions on that score, but that is another lawsuit.

3. Even had this Court intended (as it did not) to permit future consideration of the merits of Car Carriers' RICO claims, under res judicata principles it would not be at liberty to do so. It dismissed the 1982 Action on the merits, and it is bound to abide by the legal consequences of that dismissal.

Thus the 1982 Action was clearly dismissed on the merits. That leaves open only the question whether the 1982 Action's cause of action is the same as that of the 1983 Complaint.

## 2. *Identity of Causes of Action*

 Under the doctrine of res judicata, a cause of action encompasses all theories that were or could have been used in

support of recovery on a single basic fact situation. See *Nevada v. United States,* —— U.S. ——, 103 S.Ct. 2906, 2918–19 n. 12, 77 L.Ed.2d 509 (1983); *Harper Plastics, Inc. v. Amoco Chemicals Corp.,* 657 F.2d 939, 944–45 (7th Cir.1981). Accordingly the relevant inquiry is into the facts Car Carriers alleged in its 1982 Complaint, not the legal theories on which it relied.

Ford and Nu-Car have conducted the requisite factual analysis, while Car Carriers has not. Both Ford Mem. 8–9 and Nu-Car Mem. 13–15 list in detail the unlawful conduct of which they have been accused in both the 1982 and 1983 Complaints. Notably, that conduct includes a plan by Ford to run Car Carriers out of business and to divert its business to Nu-Car. Ford also presents a neat syllogistic proof the two lawsuits arise out of the same fact situation. It is based on the requirement of *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) that for a federal court to exercise pendent jurisdiction over a state law claim, "state and federal claims must derive from a common nucleus of operative fact." Both complaints allege the propriety of pendent jurisdiction. Those allegations subsume the necessary premise (which Ford does not now dispute) the state law counts arise from the same "nucleus of operative fact" as the federal count or counts. Thus Ford argues:

1. Car Carriers' five state law counts in the 1982 Complaint necessarily arise from the same nucleus of operative fact as the federal count.

2. Those five state counts were practically and legally equivalent to five of the state law counts in the 1983 Complaint.[3]

3. Under the *Gibbs* requirement, the five equivalent state law counts in the 1983 Complaint, as well as the 12 new state law counts, all necessarily arise from the same nucleus of operative fact

as the six federal counts in the 1983 Complaint.

4. Ergo the 1983 Complaint counts—both federal and state—arise from the same nucleus of operative fact as the 1982 Complaint counts. Q.E.D.

Car Carriers has provided no response.

■ Car Carriers purports to make seven arguments the 1982 Action is not res judicata. Four of those arguments however (numbers 1, 2, 5 and 6) rely on differences between the Sherman Act and RICO to contend the two complaints represent separate causes of action. But the application of res judicata principles depends on differences in the underlying facts, not differences in the legal theories relied on. It is therefore simply irrelevant that in enacting RICO Congress created a new "cause of action" (argument 1), that the essential elements of the Sherman Act and RICO causes of action differ (argument 2), or that RICO does not require proof of a conspiracy while Sherman Act § 1 does (argument 5).

As its only factual argument (argument 6), Car Carriers says (Mem. 13):

The essence of the antitrust claims was (i) the alleged conspiratorial termination of plaintiff Car Carriers pursuant to Nu-Car's sham and predatory bid and (ii) the boycott of plaintiffs' attempted sale of its assets following termination. The RICO claims, on the other hand, allege, *inter alia,* that Ford, through a pattern of racketeering activity, gained dominance and control over the Car Carriers' enterprise with the result that they were able to force Car Carriers to invest heavily in new equipment and terminal improvements without an opportunity to recoup or amortize these expenditures by receipt of compensatory tariffs and other allowances (RICO Counts I and II).

That glib separation of the facts underlying the RICO and Sherman Act counts does

---

**3.** While Ford did not develop this portion of its argument, this Court's own investigation reveals Counts II through VI of the 1982 Complaint are equivalent in every relevant respect to Counts XVI through XVIII, XX and XXI of the 1983

Complaint, respectively. For example, both 1982 Complaint Count VI and 1983 Complaint Count XXI seek enforcement of a contract by Ford to pay Car Carriers $1,128,487.53.

not withstand scrutiny. Like the present RICO claims, the earlier antitrust claims alleged Ford induced Car Carriers to make investments it could not recoup. Like the earlier antitrust claims, the current RICO claims allege Car Carriers was terminated due to a sham and predatory bid, and Ford and Nu-Car refused to buy Car Carriers' assets upon its termination.[4]

Nor do Car Carriers' remaining three arguments compel the retention of the 1983 lawsuit. Those arguments are (retaining Car Carriers' numbering):

3. Because the Sherman Act has a four-year statute of limitations, dismissal of the 1982 Action is res judicata only as to events occurring after November 16, 1978, the date four years before filing of the 1982 Complaint.

4. Dismissal of the 1982 Action occurred April 1, 1983 and thus is not res judicata as to events occurring or discovered after that date.

7. *Marrese v. American Academy of Orthopaedic Surgeons*, 726 F.2d 1150 at 1153 (7th Cir.1984) (en banc) held res judicata applies only if the cause of action in the prior suit was "materially identical" to the cause of action in the subsequent suit.[5] RICO is not identical to the Sherman Act, so that res judicata does not apply.

All three of those arguments, especially the last, deserve short shrift:

3. If Car Carriers' current theory encompasses pre-1978 facts while its 1982 theory did not, the 1982 Action is still res judicata because Car Carriers *could* have argued its current theory in 1982. Moreover the 1982 Complaint did allege pre-1978 facts, and such allegations were not unreasonable in light of judicial interpretation of the federal antitrust limitations provision. See *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 339, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971).

4. Of course no lawsuit bars actions arising out of events occurring after its dismissal. *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327–28, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955). Car Carriers, however, presents no authority for the startling proposition that "discovery" of a cause of action after disposition of a previous lawsuit prevents the operation of res judicata. If Car Carriers can base the cause of action entirely on events occurring after April 1, 1983, it is free to do so—but this Court will not comb the 107-page Complaint to search for such allegations. Instead it will dismiss the 1983 Complaint without prejudice (leaving the res judicata effect of the with-prejudice dismissal of the 1982 Action intact). Car Carriers may then if

**4.** Car Carriers cites *Himel v. Continental Illinois National Bank & Trust Co.*, 596 F.2d 205, 209 (7th Cir.1979) for the proposition that a single injury may result from two basic fact situations and give rise to two independent causes of action. That principle is unexceptionable, but merely invoking it does not make it applicable here. It is not.

**5.** That is really an untenable position, for it quotes that phrase from *Marrese* wholly out of context. Indeed Ford and Nu-Car invoke *Marrese* with far greater plausibility. Thus a word may be appropriate as to this opinion's having analyzed the problem without reference to *Marrese*. At the risk of sounding unregenerate, this Court continues to view both the plurality opinion and the partial concurrence that produced the Court of Appeals majority in *Marrese* as seriously flawed. But what is significant for current purposes is that the *Marrese* flaw (as this Court sees it) resides in the total

lack of subject matter jurisdiction in the first *Marrese* court (the state court) over the claim sought to be barred by res judicata in the second (the federal) court. Of course no such problem is posed here. To equate *Marrese* with this case, the first *Marrese* lawsuit (which was dismissed for failure to state a cause of action) would have to have been brought in the federal courts rather than the state's. Had that been so, the res judicata issue would have been answered from the chapters of a res judicata primer, not an advanced text—and this Court would never have launched the Court of Appeals on the lengthy and tortuous road it has pursued, to a narrowly-reached and dubious ultimate destination. As the text discussion reflects, *this* case poses no conceptual difficulties (except to Car Carriers) on the question of identity of causes of action before a court having had jurisdiction—power—to decide both the first and the second cases.

it wishes—and if it can—bring a suit alleging actions occurring entirely after April 1.

7. Car Carriers betrays a total misunderstanding of the basic proposition that the operation of res judicata depends on the facts alleged and all theories that were or *could have been* advanced to support recovery on those facts. Because Car Carriers could have advanced a RICO theory in 1982, and that theory is materially identical to the RICO theory it did advance in 1983, res judicata applies.

All of Car Carriers' contentions have thus evaporated. In the language of our Court of Appeals in *Harper Plastics*, 657 F.2d at 945:

An unsuccessful party may not, therefore, frustrate the doctrine of res judicata by cloaking the same cause of action in the language of a theory of recovery untried in the previous litigation.

Because none of Car Carriers' assertions justifies survival of its 1983 Complaint the motions by Ford and Nu-Car must be granted. Inasmuch as Car Carriers asserts its Complaint contains allegations of events occurring after April 1, 1983 that should not be barred by its earlier lawsuit, the current federal claims are dismissed without prejudice. Under *Gibbs* the state law claims must once again be dismissed without prejudice as not pendent to any valid federal claim.

### N & W Motion To Dismiss

Car Carriers joined N & W in the 1983 Complaint because it seeks equitable rescission of the lease between N & W and Car Carriers' related entity Transport, also a plaintiff. N & W seeks dismissal for two reasons:

1. Even though Car Carriers joins N & W in two of its RICO claims, the Complaint nowhere alleges N & W acted contrary to federal law. If Ford and Nu-Car are dismissed out, the charges against N & W should be dismissed as not pendent to any valid federal law claim.

2. While not alleging N & W violated RICO, Car Carriers does seek equitable rescission of N & W's lease with Transport as a RICO remedy (in fact rescission is the only remedy sought against N & W under *any* claim). But RICO does not provide equitable remedies, according to N & W, so the Complaint should be dismissed as to N & W.

This Court has previously had occasion to deal with the second question: whether RICO provides equitable remedies to civil plaintiffs. It answered that interesting question in the negative in *Kaushal v. State Bank of India*, 556 F.Supp. 576, 581–84 (N.D.Ill.1983). Were it called on to do so, this Court would adhere to that decision.

But the first ground for N & W's dismissal—a far more fundamental one—prescinds any need to consider the equitable relief issue. Both Counts I and II (the only federal counts in which N & W is joined) name Ford and Ford alone as the villain, the "person" that controls the "enterprise" in RICO terms. N & W is alleged to have ended up with a lease with Transport "[a]s a result of the Ford control over the enterprise" (Complaint ¶ 33(k)). It is not alleged to have been a conspirator or in any way implicated as a wrongdoer, but rather at worst the innocent beneficiary of Ford's machinations. Indeed Complaint ¶ 33(1) alleges N & W was itself the target of Ford pressure to provide Ford an alternate railroad site.

Of course that is not the stuff of which a RICO claim is forged. RICO's sections creating private remedies, 18 U.S.C. §§ 1964 and 1962, permit suit only against the culpable "person." *Parnes v. Heinold Commodities, Inc.*, 548 F.Supp. 20, 23–24 (N.D.Ill.1982). N & W does not fit that description, and it simply cannot be haled into federal court via RICO.

At most then N & W can be drawn into this action under some notions of pendent *party* jurisdiction. Our Court of Appeals has strongly indicated little, if anything, of that doctrine survives in any

event. *Graf v. Elgin, Joliet & Eastern Railway Co.*, 697 F.2d 771, 775 (7th Cir. 1983); *Hixon v. Sherwin-Williams Co.*, 671 F.2d 1005, 1008–09 (7th Cir.1982). But where as here the underlying federal claim has vanished through dismissal of Ford and Nu-Car, it would require some mystical kind of levitation to keep N & W in the case. After all, "pendent jurisdiction" must be pendent to *something*.

### Conclusion

All defendants' Rule 12(b)(6) motions are granted, and this action is dismissed. For the reasons already stated the entire dismissal is without prejudice, but the res judicata effect of Opinion's with-prejudice dismissal of the 1982 Action remains in full force.

### SUPPLEMENT TO MEMORANDUM OPINION AND ORDER

Representatives of both sides to this litigation—one winning defendant and all the losing plaintiffs—seek relief from the March 13, 1984 judgment entered upon this Court's March 9, 1984 memorandum opinion and order ("Opinion II") dismissing the Amended Complaint in this action ("1983 Complaint"):

1. Nu-Car Carriers, Inc. ("Nu-Car") has moved "to clarify" Opinion II.

2. Plaintiffs (collectively "Car Carriers") have moved to amend the judgment because certain of their claims are assertedly not barred by res judicata.

For the reasons stated in this supplement to Opinion II, both motions are denied.

Opinion II was based on the res judicata effect of *Car Carriers, Inc. v. Ford Motor Co.*, 561 F.Supp. 885 (N.D.Ill.1983) ("Opinion I"), which had dismissed with prejudice the federal law counts of an earlier Complaint ("1982 Complaint") involving substantially the same parties. Opinion II's dismissal was without prejudice as to the

entire 1983 Complaint, leaving intact "the res judicata effect of the with-prejudice dismissal of the 1982 Action" (583 F.Supp. at 226).

In essence, Nu-Car's objection to Opinion II is that it did not describe the fate of the 1983 Complaint's counts for which Car Carriers invoked diversity jurisdiction. But there is a sound jurisprudential reason for such silence.

It should first be noted the *1982* Complaint contained no counts asserting diversity of citizenship. Accordingly Opinion I disposed only of (1) federal-question-jurisdiction counts (dismissing them with prejudice for failure to state a claim for relief) and (2) pendent state counts (dismissing them without prejudice pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Then Opinion II tracked the dispositions in Opinion I, dismissing "federal claims" without prejudice because they arose from the same basic fact situation as the counts dismissed with prejudice in Opinion I,[1] and also dismissing "state law claims" without prejudice (once again referring to *Gibbs*). Now Nu-Car asks this court to decide into which of the two categories the 1983 Complaint's alleged diversity-jurisdiction counts fall.

That question however, with dismissal of the 1983 Complaint having been compelled in all events, really asks for an impermissible advisory opinion. After all, *allegations* of diversity do not confer federal jurisdiction—only the *fact* of diversity does. This Court did not have to, and did not, decide whether diversity existed in fact in this case—for the result would have been precisely the same whatever the facts were (583 F.Supp. at 228):

> dismissal ... without prejudice, but [with] the res judicata effect of Opinion's with-prejudice dismissal of the 1982 Action remain[ing] in full force.[2]

---

1. Without-prejudice dismissal was called for only to allow for the possibility Car Carriers might be able to assert a cause of action arising entirely out of post-Opinion-I events (or perhaps post-1982-Complaint events). *Lawlor v. Nation-*

*al Screen Service Corp.*, 349 U.S. 322, 327–28, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955); 583 F.Supp. 226–27.

2. In other words:

Nor did Opinion II purport to give definitive scope to "full force" in that context. If Car Carriers were to try to sue Nu-Car once again, it would be up to the court where *that* suit was brought to flesh out the existence or scope of the res judicata bar caused by Opinion I, *not* by Opinion II.

Accordingly this court refuses to advise that hypothetical future court how to answer a question that has not yet arisen. Nu-Car's motion "to clarify"—really a motion for reconsideration—in this already dismissed action is denied.

Unlike Nu-Car's contention that Opinion II was under-inclusive in defining the scope of res judicata, Car Carriers urges Opinion II was over-inclusive in that respect. According to Car Carriers:

1. 1983 Complaint Counts VI, VI, VII–XI and XIII advance claims as to which the Illinois Commerce Commission ("ICC") has primary jurisdiction.

2. Because claims raising the same issues were pending before the ICC when the 1982 Action was brought in this Court, the claims "could not have been brought" in that action.

3. That fact rendered this Court not "jurisdictionally competent" to have determined those claims in the 1982 Action, and the claims are therefore not barred by res judicata.

■■■ Car Carriers' argument glosses over the real nature of the "primary jurisdiction" concept, which does not literally oust a federal court of jurisdiction in the jurisprudential sense. Instead primary jurisdiction is a common-law doctrine that enables a court to determine the appropriate *timing* of its own exercise of *admitted* jurisdiction, so an agency sharing concurrent jurisdiction with the court over the subject matter has time to make its own findings with respect to the claims and disputes. *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). Car Carriers' own alleged principal authority, *Hansen v. Norfolk and Western Railway Co.*, 689 F.2d 707 (7th Cir.1982) itself points out (*id.* at 710, emphasis supplied) primary jurisdiction is appropriately invoked "when a claim *is cognizable in a court* but adjudication of the claim" requires the special competence of administrative agencies. Indeed *Hansen* speaks specifically of "*concurrent* jurisdiction with an administrative agency" and "sound reasons for the court to stay its hand until the agency has applied its expertise to the salient questions" (*id.*)—scarcely the locution appropriate to a court's absence of jurisdiction in the true sense.

Car Carriers thus cannot prevail on the proposition the claims pending before the ICC "could not have been brought" as part of the 1982 Action. This Court perhaps would have deferred decision of those claims on so-called primary jurisdiction principles, but that does not establish the claims could not have been *brought* here. In fact Car Carriers itself acknowledged an affirmative answer to the question whether the claims "could have been brought" by its seeking to bring them in the rejected 1982 Amended Complaint, and by actually bringing them in the 1983 Complaint. Thus Car Carriers must fail in its argument res judicata does not operate with full vigor as to the 1982 Complaint.

It is apparent Opinion II warrants no further consideration on the bases asserted by either set of movants. That decision is neither under- nor over-inclusive, and nei-

---

1. Analysis of the claimed diversity counts, in the same way Opinion II analyzed the federal-question counts in the 1983 Complaint (and leading to the same without-prejudice result, for the reason stated in n. 1), would have been required only if this Court unquestionably possessed diversity jurisdiction.

2. Opinion II involved a purely *legal* determination, not any factual determination such as that compelled to confirm jurisdiction on diversity grounds.

3. Because the res judicata issue as to the claimed diversity-jurisdiction counts could arise only if a third lawsuit were filed by Car Carriers, and the court in that lawsuit would have to decide that question in any event (see the next paragraph of the text), this Court's resolution of the factual predicate for diversity jurisdiction was wholly unnecessary to the decision in Opinion II.

ther clarification nor alteration is necessary. Both motions are denied.