**MAGNUS ELECTRONICS,
INC., Plaintiff,**

v.

**ARGENTINE REPUBLIC, Defendant.**

No. 85 C 10557.

United States District Court,
N.D. Illinois E.D.

May 7, 1986.

Scott A. Brainerd, Brainerd & Bridges, Chicago, Ill., for plaintiff.

Gordon B. Nash, Gardner, Carton & Douglas, Chicago, Ill., for defendant.

### MEMORANDUM OPINION
### AND ORDER [1]

SHADUR, District Judge.

Magnus Electronics, Inc. ("Magnus") has sued the Argentine Republic ("Argentina")

---

1. This Court first announced this decision at a previously scheduled status call April 23, 1986, at which time this opinion had been completed and was being run off the word processor for final proofreading and checking of citations. When Magnus' counsel then complained this

for damages for converting Magnus' goods. Argentina has now moved under Fed.R.Civ.P. ("Rule") 12(b)(1) to dismiss Magnus' Complaint[2] for lack of subject matter jurisdiction.[3] Argentina also seeks reimbursement of its expenses under Rule 11. For the reasons stated in this memorandum opinion and order, the first motion is granted, while the second is granted in part and deferred in part.

## Facts[4]

In October 1981 Magnus entered into a written contract to sell goods to Argentine purchaser Alfredo DiLullo ("DiLullo") (¶ 2). Magnus' understanding was that DiLullo bought the goods for resale to Argentina after he had been the low bidder in a competitive bidding process (¶ 3). Under the sale contract Magnus was to deliver the goods to DiLullo in Buenos Aires through the Royal Bank of Canada ("Bank") (¶ 4), which in turn was to deliver the goods to DiLullo only against payment of the purchase price (¶¶ 4 and 6). Magnus hired a freight forwarder to ship the goods from Chicago to Miami (¶ 5). On October 19 the goods were delivered to Aerolineas Argentinas ("Aerolineas") under an airway bill that designated Bank as sole consignee (¶ 5).

In early November Aerolineas flew the goods from Miami to Buenos Aires (¶ 7). On November 11 agents of Aerolineas and the Argentine Air Force "conspired together" and seized the goods in Argentine customs (¶ 8). At least one forged document was used to implement that conversion (id.). Aerolineas and DiLullo then "conspired" to conceal that conversion (¶ 10).

Magnus also alleges:

7. [Aerolineas], a wholly-owned instrumentality and agent of the Argentine government is a "foreign state" within the parameters of 28 U.S.C. § 1603. [Aerolineas] carries on "commercial activity" within the United States on behalf of Argentina and has substantial contact with the United States; it regularly conducts business operations throughout the United States. Indeed, [Aerolineas], a corporation whose profits inure to the benefit of the Argentine government, is an alter-ego of Argentina.

\* \* \* \* \* \*

11. Argentina's conspiring with and use of its wholly-owned instrumentality and agent, [Aerolineas], a commercial agent which does business in and regularly exercises the privileges and benefits of protections of conducting business in the

---

Court's announced application of res judicata was inconsistent with its oral statements in the course of denying counsel's Fed.R.Civ.P. 60(b) motion in *Magnus I* (of which more later), this Court requested that counsel furnish a copy of the transcript of the earlier proceedings. That was done. Then, while this opinion was being recast to incorporate an appropriate response in light of those earlier proceedings, serendipity intervened in the form of our Court of Appeals' decision in *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589 (7th Cir.1986), affirming this Court's res judicata decision reported at 583 F.Supp. 221, 229 (N.D.Ill.1984). This opinion now reflects both the *Magnus I* matter counsel had raised and the separately applicable impact of *Car Carriers*.

2. All references to the Complaint will simply take the form "¶ —."

3. Argentina Mem. 7 n. 5 also comments "in passing" that Magnus has failed to comply with the service requirements contained in the Foreign Service Immunities Act of 1976, 28 U.S.C.

§§ 1608(a) and (b). Argentina has supplied no facts to permit evaluation of that claim (and Magnus, perhaps understandably, has ignored it entirely). This opinion therefore assumes Argentina is in court—but only for personal jurisdiction purposes.

4. For purposes of the current motion, this opinion's factual recital is drawn from the Complaint. In applying the concept that "well-pleaded" allegations are accepted as true, this section of this opinion has included a number of allegations advanced only "on information and belief" —but as the later text discussion reflects, certain purely conclusory assertions without identified factual support have not been credited. As *Prudential Insurance Co. of America v. Sipula*, 776 F.2d 157, 158–59 (7th Cir.1985) put it (citations omitted, and emphasis in original):

In considering the propriety of the district court's dismissal of this action, we must accept the well-pleaded *factual* allegations of the complaint as true.... We are of course not bound by the plaintiff's legal characterizations of the facts....

United States, subjects Argentina to suit under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(2), in its first and third clauses. The cause of action herein set forth arises out of a commercial activity maintained by Argentina in the United States. [Aerolineas'], Argentina's and DiLullo's conspiring to cause plaintiff injury in the United States has proximately and foreseeably caused tortious financial injury to plaintiff corporation in the United States.

As n. 6 reflects, the Complaint also includes some brief conclusory allegations about the alleged Argentina-Aerolineas relationship.

### Subject Matter Jurisdiction

■ Magnus' Complaint ¶ 1 first seeks to ground this Court's jurisdiction on diversity of citizenship under 28 U.S.C. § 1332.[5] But Argentina, as a sovereign state, is amenable to suit only under the Foreign Sovereign Immunities Act of 1976 (the "Act"), Sections 1330 and 1602–1611. As *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 372 (7th Cir.1985) put it:

> [T]he comprehensive scheme established by the [Act] is the exclusive means by which foreign countries may be sued in American courts.

This very point was made (and the same *Frolova* language was quoted) in this Court's opinion (the "Opinion," 620 F.Supp. 387) dismissing Magnus' earlier-filed lawsuit (84 C 7630, *"Magnus I"*). It is nothing less than irresponsible for Magnus' counsel to have advanced this wholly groundless diversity basis for jurisdiction.

Apparently in tacit (though belated) recognition of that groundlessness, Magnus' memorandum on the current motion does not assert Section 1332 as a jurisdictional source (though no explanation is given for having alleged it in the first place). Instead Magnus attempts to invoke this Court's jurisdiction under the first and third clauses of Section 1605(a)(2):

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> \*     \*     \*     \*     \*     \*
>
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

On that score Magnus argues:

1. Aerolineas acted as Argentina's "agent" (¶¶ 7, 10, 11), "wholly-owned instrumentality" (¶¶ 7, 11) and "alter-ego" (¶ 7). Hence Magnus claims Aerolineas' United States activities constitute "a commercial activity carried on in the United States" by Argentina within the first clause of Section 1605(a)(2).

2. Under the last clause of Section 1605(a)(2), Magnus' financial loss in the United States was a "direct effect" of Argentina's theft of the goods in Buenos Aires.

Argentina disputes both those contentions.

What is dispositive as to those *legal* theories, however, is Argentina's related claim that the Opinion and *Magnus I* itself bar this action on res judicata grounds.[6] Because that argument prevails and is fatal

---

**5.** All further citations to Title 28 will take the form "Section—," with numerical references to that Title and not to the internal numbering of the Act next referred to in the text.

**6.** Magnus Mem. 15 n. 8 suggests its Complaint presents new "crucial facts" not addressed by the Opinion. But Magnus' new "facts" are simply conclusory allegations that Aerolineas acted as Argentina's "agent" and "alter-ego." Such allegations cannot be considered "well pleaded," for they are legally insufficient. That being true, the present cause of action is no different from that in *Magnus I*, and the principle hereafter stated in the text applies. However, this opinion later deals independently with the significance and effect of Magnus' expanded factual submissions.

to Magnus' present action (except perhaps as to facts newly-alleged in the Complaint), this opinion initially addresses the parties' substantive contentions in that matrix.

■ Res judicata principles encompass both "claim preclusion," which prohibits litigants from splitting a single cause of action into more than one proceeding, and "issue preclusion," which forbids litigants from relitigating issues actually resolved in an earlier proceeding. *Migra v. Warren City School District, Board of Education,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984) thoroughly explains that terminology. Claim preclusion applies to bar theories that were or that could have been raised in the prior case, *Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2917–18, 77 L.Ed.2d 509 (1983):

> Simply put, the doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, "[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac,* 94 U.S. [(4 Otto. 351)] 351, 352 [24 L.Ed. 195] (1877). The final "judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever." *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948).

■ Here Magnus' Complaint plainly alleges the same "cause of action" over which this Court earlier concluded it lacked subject matter jurisdiction. Magnus simply advances a new *theory* of jurisdiction over that selfsame cause of action. What res judicata teaches is that because Magnus had the ability to (but did not) assert that theory to refute Argentina's challenge to this Court's jurisdiction in *Magnus I,* this Court's decision the first time around precludes relitigation of that issue now.

Lest there be any question on that score, Magnus Mem. 1 makes the relationship between this action and *Magnus I* plain:

> The instant complaint is a re-filing of *Magnus Electonics [sic], Inc. v. The Argentine Republic,* No. 84 C 7630 (N.D. Ill., 1984) (Shadur, J.). Facts underlying the instant cause of action are detailed in the record of that and the present case, and are well known to this Court.

And Magnus Mem. 15 n. 8 says:

> Although not mentioned or raised by defendant, this Court speculated in open Court on March 21, 1985 [sic—should be 1986], on the question of whether plaintiff's refiling of this action was barred by the doctrine of *res judicata.* Plaintiff respectfully submits that crucial facts and legal theories were not before the Court in its Oct. 8, 1985 Opinion.

But what is conspicuously absent from Magnus' submission is any statement that the asserted "crucial ... legal theories" were not equally available to Magnus and its counsel at the time of *Magnus I.* They clearly were.

■ Despite that, Magnus Mem. 15 n. 8 suggests the dismissal of *Magnus I* for lack of subject matter jurisdiction has no res judicata effect on Magnus' present action. That contention wholly lacks merit as to the key issue here: the existence vel non of subject matter jurisdiction itself. *Ogla-la Sioux Tribe of Pine Ridge Indian Reservation v. Homestake Mining,* 722 F.2d 1407, 1411 (8th Cir.1983) states the applicable rule:

> Res judicata, however, applies to questions of jurisdiction as well as to other issues.... Dismissal of a suit for lack of subject matter jurisdiction precludes relitigation of the same issue of subject matter jurisdiction in a second federal suit on the same claim. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4402, at 11.

And see *Harper Plastics, Inc. v. Amoco Chemicals Corp.,* 657 F.2d 939, 943 (7th Cir.1981). Magnus simply cannot refile its lawsuit every time it dreams up a new theory of subject matter jurisdiction.

That doctrine clearly bars this action if what Magnus Mem. 15 n.8 characterizes as newly-advanced "crucial facts" were not crucial at all, in the sense they were not outcome-determinative as that term is used in, e.g., *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984). Any claimed factual issues that would make no legal difference cannot alter the res judicata effect of the Opinion any more than they could stave off a summary judgment motion. *Car Carriers*, at 593–95.

Indeed, Magnus' new "crucial facts" are not truly new, though this is the first time Magnus has put them into a formal pleading. As early as its responsive Memorandum in *Magnus I*, Magnus "impermissibly amplified its own allegations with assertions contained in a letter its lawyer wrote this Court April 30, 1985" (Opinion, 620 F.Supp. at 388 n. 1). Then immediately before issuance of the Opinion, Magnus' counsel tried to advance precisely the same kind of conspiracy allegations that marked the difference between the Complaint in *Magnus I* and the current Complaint (*id.*):

> In much the same way Magnus' lawyer has just (after this opinion was already dictated and on the word processor) sent an unbidden October 7 letter "by way of response to defendant's reply brief in support" of Argentina's current motion. That letter, filed without leave of court and stating a desire to amend the Complaint further to "plead[ ] a conspiracy between Argentina, its 100% owned airline, and DiLullo," has not been taken directly into account in this opinion. It is not clear, however, how any amendment based on either of counsel's letters would change the result reached here (and counsel must be mindful of the Rule 11 implications of wrenching the facts to get around that result).

It requires no extended analysis to see that, as that footnote indicated, what Magnus now calls the added "crucial facts" should not be viewed as outcome-determinative. For that purpose, the matter may be viewed in terms of Magnus' own current characterizations. Its Mem. 2 says:

> Essentially, the new allegations allege that defendant, the sovereign State of Argentina, by and through certain of its military agents, conspired with DiLullo, the buyer, and utilized Aerolineas Argentinas ("AA"), its wholly-owned agent and instrumentality, to steal plaintiff's goods during the pendency of AA's transport of same to plaintiff's designated consignee, The Royal Bank of Canada ("RBC").

Then its Mem. 4 states Magnus' theory in light of those allegations:

> The focus of the instant complaint's allegations are specific, but the legal theories are complicated. Plaintiff's cause of action derives from AA's commercial activity in the United States despite the fact that the locus of the defendant's misconduct arguably occurred in Buenos Aires. Because AA and the sovereign are alleged to have conspired and interacted not only in connection with plaintiff's contract of procurement, but also in a subsequent conversion and "cover-up" under these, DiLullo's and AA's actions are directly imputable to Argentina for jurisdictional purposes under these peculiar facts. AA's commercial activity in the United States, for purposes of jurisdictional analysis, effectively became that of the sovereign.

Fairly read, that statement invites the application of the res judicata principle, as exemplified by *Car Carriers* and the other cases already cited, not only to Magnus' new legal theories but to its new facts. *Car Carriers*, at 596. However, Magnus' counsel complains that would be unfair because this Court encouraged this new lawsuit when it rejected counsel's Rule 60(b) motion challenging the Opinion in *Magnus I*.[7] To avoid any such implications of entrapment, this opinion will address the effect of any new factual allegations on the merits of the jurisdictional question.

But before Magnus' proffered view of the new "crucial facts" is taken for the

---

**7.** This opinion's Appendix quotes the comments on which counsel relies.

sake of argument, it is worth a few brief comments as to the difficulties of accepting Magnus' assertions at face value:

1. As for the new and purely conclusory assertion—unsupported by factual allegations—that DiLullo was the "agent" for Argentina, that is directly at odds with the same Complaint ¶ 3's allegation that DiLullo "submitt[ed] the 'low bid' in a competitive bidding process...." Indeed Magnus' own consistent approach to this litigation casts doubt on its claim of DiLullo's "agency": If Magnus were really serious about the existence of such agency in the true sense, it would have asserted Argentina's liability for the purchase price of the goods on a *contract* basis rather than Magnus' complex tort theory. Yet there has been no whisper of any such "agency"-created liability either in *Magnus I* or here. In all events, however, the critical factor for this suit is that Magnus relies on *Aerolineas'* conduct (and not DiLullo's) in this country as constituting Argentina's purported "commercial activity" here.

2. This Court cannot take as "well pleaded" Magnus' wholly unsupported conclusory statement about Aerolineas as Argentina's "alter ego." Whatever source of law is looked to for the concept of piercing the corporate veil, that kind of bald-faced assertion—again unbuttressed by any pleading of factual support—won't do the job. See *Letelier v. Republic of Chile*, 748 F.2d 790, 793–95 (2d Cir.1984), *cert. denied*, —— U.S. ——,

105 S.Ct. 2656, 86 L.Ed.2d 273 (1985) (refusing to ignore the separate existence of a government-owned airline on an unsubstantiated "alter ego" basis); and see this Court's opinions rejecting wholly unsupported "alter ego" allegations, *B.R.M. Industries, Inc. v. 3JM Manufacturing Co.*, No. 85 C 8541, slip op. at 3–4 (N.D.Ill. Dec. 11, 1985); *Club Assistance Program, Inc. v. Zukerman*, 594 F.Supp. 341, 351 (N.D.Ill.1984). Once more Magnus' approach has tended to blur rather than to sharpen the issues.

■ Those points should really conclude Magnus' contention that Aerolineas' conduct in the United States is somehow attributable to Argentina for jurisdictional purposes under the Act. But even were it assumed arguendo (and contrary to law) that Aerolineas' United States airline operations were "commercial activity" of Argentina itself, that would still not satisfy the first branch of Section 1605(a)(2). That is so because the statute requires not only that the foreign sovereign conduct "commercial activity" within the United States but also that the plaintiff's cause of action must be "based upon" such activity.[8]

In the normal use of language, that "based upon" requirement has to be understood as denoting a proximate-cause relationship between the activities in the forum and the acts on which the cause of action is based, just as the term "but for" is understood in law as importing a causal nexus rather than a merely time-sequential relationship.[9] That notion was put succinctly

---

**8.** Magnus seeks to gloss over the "based upon" requirement by alleging (Complaint ¶ 11) (emphasis added):

> The cause of action herein set forth *arises out of* a commercial activity maintained by Argentina in the United States.

In the same way the argument in Magnus Mem. 4 is captioned (all in capitals) (emphasis added):
Plaintiff's Claim *Arises From* Defendant's Maintenance of Commercial Activity in the United States

Under normal language meaning, "arises out of" or "arises from" involves a less direct nexus than "based upon," and it is the latter—the statutory standard—this Court must apply.

**9.** This notion may be illustrated by a hypothetical example. "But for" the fact the Chicago and

North Western train arrived at the Glencoe station at 6:35 a.m. today rather than the scheduled 6:31, this Court would not have been at the Chicago terminal at 7:14 a.m. rather than the scheduled 7:10. Had this Court then been injured by (say) a North Western employee's negligence at the Chicago terminal, it could have urged that in a strained sense of the term the assumed accident would not have occurred "but for" the train's late departure from Glencoe. After all, being in the terminal four minutes earlier would have avoided the occurrence. But such a distorted use of the "but for" concept could not extend to a "based upon" test, for there is no realistic sense in which this Court could assert the hypothetical injury claim was "based upon" that late departure: It played no

and well in *Verlinden, B.V. v. Central Bank of Nigeria,* 488 F.Supp. 1284, 1295–96 (S.D.N.Y.1980) (footnotes omitted and emphasis in original), *aff'd on other grounds,* 647 F.2d 320 (2d Cir.1981), *rev'd on other grounds,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983):

> Neither of these provisions [the broad reach of long-arm statutes under the Due Process Clause or the conferring of jurisdiction even where the defendant's contacts with the forum bear "no relation to the particular tort" that forms the basis of the cause of action] has found its way into the Immunities Act. Instead, as to foreign states, Congress provided a much narrower basis for jurisdiction. When jurisdiction is alleged under any of the Act's three "commercial activities" exceptions, the plaintiff's cause of action must be *"based upon"* the commercial activity specifically enumerated in the exception. At least with respect to the first two exceptions, we take this to mean that there must be a close connection between the cause of action asserted and the jurisdictional facts upon which it is based. Other contacts between a defendant and a forum state unrelated to a particular cause of action but that might justify the assertion of jurisdiction under the theories of "doing business," or even of "transacting business," do not satisfy the requirements of the Immunities Act. Rather, the focus must be on the nexus between the forum and the particular facts giving rise to the cause of action.

See the extended discussion of a "nexus" approach to the "based upon" requirement in *Vencedora Oceanica Navigacion, S.A. v. Compagnie Nationale Algerienne de Navigation,* 730 F.2d 195, 199–204 (5th Cir. 1984) (per curiam).

Under any appropriate causal-nexus standard, the claimed conversion of Magnus' goods by Argentina—an event that occurred thousands of miles from United States soil—cannot be said under the greatest stretch of the term to be "based upon" Aerolineas' conduct of its airline activities in Miami. That is further illustrated by contrasting this case with the most extended application to date of the "based upon" criterion, finding an airline's foreign tort to be based upon its United States commercial activities, in *Sugarman v. Aeromexico, Inc.,* 626 F.2d 270 (3d Cir.1980). Even if *Sugarman* is viewed as good law,[10] it would not support jurisdiction here.

One other factor bears mention at this point, as it does in the Rule 11 discussion later in this opinion. Both in *Magnus I* and here, Magnus' counsel has seemed to view legal rulings as the occasion for reshaping the facts to fit whatever loophole may remain unclosed by those rulings. Thus an individual identified in *Magnus I* as merely the seller of goods to the Argentine government, after having been awarded a contract in competitive bidding—DiLullo—somehow becomes magically transformed into an "agent" for the government. And Aerolineas, the common carrier transporting the goods from Miami to Argentina (as Magnus acknowledges it had done in previous Magnus-DiLullo transactions), is now said to be Argentina's "alter-ego" whose commercial activity in the United States is attributable to Argentina. Despite those apparent shifts in factual allegations in an effort to override legal deficiencies, one vital notion has remained absent from Magnus' allegations: any assertion that the

direct and immediate role in the accident. And even had the North Western people hypothetically plotted the entire thing from the beginning, the "based upon" concept would have been highly dubious to the extent it was sought to be focused on the *Glencoe* tardiness rather than on the Chicago-terminal tort. That entire hypothetical scenario has an obvious parallel to Magnus' efforts here, and it shows just how shallow the efforts to invoke the "based upon" jurisdictional test really are.

10. In this Court's view, if a choice had to be made (and it does not for present purposes), *Verlinden* appears more faithful to the Act's language and underlying rationale. In any case, *Vencedora* (whose extended exposition of the several possible formulations of the rule led the Fifth Circuit to approve the *Sugarman* approach) held that *no* jurisdiction existed under the Act in a situation where the "nexus" was even less attenuated than here.

United States-based activity of Aerolineas—accepting the goods for export in Miami at the behest of Magnus' freight forwarder—had as its *premeditated* purpose the later fraudulent conversion of the goods in Buenos Aires, Argentina (thus possibly more nearly satisfying the "based upon" idea). If this opinion were to stimulate still another shift by Magnus into *that* kind of allegation, its counsel had better have a known factual basis for doing so.

So much, then, for the first clause of Section 1605(a)(2). As for Magnus' reliance on the third clause of that Section—an act outside the United States connected to Argentina's commercial activity at home, causing a "direct effect" in the United States—none of the facts newly alleged by Magnus affects the analysis in the Opinion, 620 F.Supp. at 390. On that issue, the principles of res judicata as set forth in *Car Carriers* apply squarely to bar Magnus' reassertion of its claim. And even were that not so, this opinion would simply repeat the analysis and discussion in the Opinion to reach the same conclusion.

One final point deserves brief treatment, though not advanced by Magnus. This Court's dismissal of *Magnus I* identified two bases for that result: lack of subject matter jurisdiction and lack of personal jurisdiction. *Restatement (Second) of Judgments* § 20 comment e (1980) suggests circumstances in which a judgment pitched on alternative holdings should not preclude relitigation of the same claim:

> A dismissal may be based on two or more determinations, at least one of which, standing alone, would not render the judgment a bar to another action on the same claim. In such a case, if the judgment is one rendered by a court of first instance, it should not operate as a bar.

Under that rule a judgment based in part on lack of subject matter jurisdiction does not bar a suit in another jurisdiction. See Lucas, *The Direct and Collateral Estoppel Effects of Alternative Holdings*, 50 U.Chi.L.Rev. 701, 708 (1983).

■ But nothing in that doctrine of alternative holdings should allow a party to relitigate subject matter jurisdiction in the *same* court that has just rejected it. In the Opinion, 620 F.Supp. at 389 this Court specifically contrasted the potentially curable personal-jurisdiction flaw with the fatal nature of the lack of subject matter jurisdiction. Magnus had a full and fair opportunity to advance its current subject matter jurisdiction theory in the earlier proceedings, and to appeal this Court's dismissal if it were perceived as erroneous. No reason exists for allowing Magnus a second bite at the issue.

In sum, Magnus' new legal theories based upon the *same* operative facts are barred by res judicata under the analysis newly reconfirmed in *Car Carriers.* Even were they not, nothing in what Magnus now urges in legal terms can change this Court's views as expressed in the Opinion. Finally, Magnus' efforts to advance *new* facts, even to the extent they might arguably be considered outcome-determinative, fail to confer subject matter jurisdiction under the Act. This action is dismissed.

### *Rule 11 Award*

Argentina has also moved for an award of sanctions under Rule 11:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the plead-

ing, motion, or other paper, including a reasonable attorney's fee.

As this Court rehearsed the operative standard in *Zick v. Verson Allsteel Press Co.*, 623 F.Supp. 927, 932 (N.D.Ill.1985):

Rule 11's standard is not subjective. Its test is not what the signing attorney believed was warranted, but what "a competent attorney" would reasonably believe "after reasonable inquiry." *Indianapolis Colts v. Mayor and City Council of Baltimore*, 775 F.2d 177, 181 (7th Cir.1985) (quoting *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985)).

*Eastway, id.*, in observing Rule 11 does not contemplate sanctions based on an attorney's subjective bad faith, stated sanctions must be awarded where a competent attorney after reasonable inquiry must say a claim "was destined to fail." See also *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir.1985) (even Rule 11's "good faith" standard for proposed change in existing law is objective).

█ Here Magnus' attempt to advance a new "theory" of subject matter jurisdiction "was destined to fail"—and Magnus' lawyer should have known it. Counsel should have recognized the bar to Magnus' claim interposed by well-entrenched principles of res judicata. Indeed, even though this Court raised the question of the potential res judicata effect of *Magnus I* at a March 21, 1986 status hearing, Magnus' brief relegated the issue to a short, conclusory footnote. Magnus has made no colorable attempt to argue the refiling of its claim is "warranted by existing law or a good faith argument for the extension, modification or reversal of existing law...." Under the objective standard dictated by Rule 11, Magnus' counsel has come up empty as to his claimed "crucial" new legal theories.[11]

That however does not necessarily apply to the new "facts" (as contrasted with new legal theories) sought to be advanced by Magnus' counsel in the Complaint here. As to such facts, Magnus' counsel essentially says he was encouraged to try again by this Court's oral statements, made during the course of its denial of Magnus' post-Opinion motion for reconsideration, which had to be considered as a Rule 60(b) motion (see Appendix).

This Court makes no comment as to the extent to which the problem in this respect may have been self-induced by counsel's continued failure to understand the legal basis for the Opinion. But under the circumstances, this Court will *not* hold counsel breached Rule 11 by his mere failure to allege the claimed new "facts" in *Magnus I*. Instead the Rule 11 focus must be on whether, in making the new factual allegations in *this* lawsuit, counsel satisfied the other branch of a lawyer's investigatory duties under Rule 11 (as contrasted with his making the allegations simply because they were things that had to be said to get into court):

The signature of an attorney ... constitutes a certificate by him that he has read the pleading, ... that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact....

Accordingly Magnus' counsel is ordered to file, on or before May 20, 1986, a detailed statement of his investigatory and any other basis for having made the "agent" allegations as to DiLullo and the "alter-ego" allegations as to Aerolineas—how he could certify those allegations were "well grounded in fact." This Court can then better determine whether Rule 11 liability should extend to all or only part of counsel's conduct in bringing the current action.

---

11. Argentina also seeks its costs under 28 U.S.C. § 1919:

Whenever any action or suit is dismissed in any district court or the Court of International Trade for want of jurisdiction, such court may order the payment of just costs.

Statutory costs are allowed to a prevailing party as a matter of course under Rule 54(d) (even on

a presumptive basis when the final judgment is silent on this issue), and this Court so intends here. Of course, Argentina's recovery of its expenses under Rule 11 is not necessarily limited to the award of statutory costs under Section 1919.

## Conclusion

Argentina's motion to dismiss for lack of subject matter jurisdiction is granted, as is its request for sanctions under Rule 11 (the latter at least in part). After Magnus files the Rule 11 statement described at the end of the preceding section, this Court will establish the procedures appropriate to carry on from that point.

## APPENDIX

On November 8, 1985 this Court dealt orally with a belated motion by Magnus' counsel, addressed to the Opinion's dismissal of *Magnus I* and seeking to adduce facts counsel had not chosen to assert in his Second Amended Complaint in that case. After this Court pointed out that the motion had to be considered under Rule 60(b) and that no grounds had been shown for relief under that Rule, the following colloquy occurred (Tr. 3–5):

THE COURT: And, finally, Rule 15(a) which talks about liberally granting leave to amend—

MR. BRAINERD: Yes.

THE COURT: —isn't applicable when an action is dismissed. It relates to leave being granted liberally and freely before that.

Now, I ruled based on the facts that you had asserted in your third effort at a complaint.

MR. BRAINERD: The second amended?

THE COURT: Yes. [ ] [S]ubject matter [ ] jurisdiction was lacking.

MR. BRAINERD: Yes.

THE COURT: And, I stated the reasons for it. ₀

MR. BRAINERD: Right.

THE COURT: If you want to try again with your other set of facts, I guess you are free to do that because subject matter jurisdiction is not, of course, a determination on the merit[s]. But, you are going to have to do it in the context of filing a lawsuit and serving the Argentine Republic and avoiding the several problems that plagued your efforts the last time around.

MR. BRAINERD: Yes. The second amended complaint I freely admit was less than artfully drafted—

THE COURT: No, it was very artfully drafted. It just didn't get federal jurisdiction. So, you know, there is nothing—

MR. BRAINERD: It didn't contain a lot of essential elements of what I consider to be in the case.

THE COURT: Well, you are free to do that now but not in this lawsuit.

\* \* \* \* \* \*

THE COURT: All right.

In any event, the reason for the denial of the motion is basically it's a Rule 60(b) motion and you have not asserted the appropriate justifications. And in addition to that there is no prejudice. So that—

MR. BRAINERD: I understand that. It's just that—

THE COURT: —it is denied.

MR. BRAINERD: I just cannot see the waste of time—

THE COURT: It is not a waste of time. You are going to have to do the ground work again anyhow. Okay.

MR. BRAUN [Defendants' counsel]: Thank you.

MR. BRAINERD: Thank you.